1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    ROGER P. SNITCHFIELD,                    2:10-CV-3243-TLN-CMK

12              Plaintiff,

13        vs.                                 <u>FINDINGS AND RECOMMENDATIONS</u>

14    RED BLUFF POLICE DEPT., et al.,

15              Defendants.

16    _____/

17              Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

18    court is defendants' unopposed motion to dismiss (Doc. 19).

19

20                          **I.  BACKGROUND**

21              This action proceeds on plaintiff's first amended complaint (Doc. 5) against the

22    Red Bluff Police Department and various of its officers, Scott Capilla, John Rossi, and Martin

23    Perrone.  Plaintiff alleges:

24              1.  I allege that numerous police officers under orders of Mr. Scott Capilla
                  were keeping me under daily surveillance in Red Bluff Riverside Park
25                from September 2006 until the time of the traffic citation (April 28, 2008)
                  because it was assumed that a prior time (August 2006) I ignored a
26                subpoena issued by the Tehama DA Office to appear at the arraignment

                                           1

and trial of a person who attempted to stab me in the dark in Red Bluff (July 2006). I was in Trinity County at the time the subpoena was issued and I did not receive it until after it had expired.

2. I allege that Officer John Rossi and two other unidentified individuals deliberately entrapped me in an intersection to make it appear that I had committed a violation (April 28, 2008). I had a perfect driving record of more than twenty years before I was cited in the evening of the very same day that I returned to Red Bluff after an absence of three weeks. . . . On February 6, 2009, the Tehama Court notified me that the fine had been increased from $380 to $648 and my license to drive was suspended one year after the citation on June 3, 2009, by the DMV and continues to be suspended from that date until the present time. I am enduring much hardship due to inability to drive because of an illegal citation.

Plaintiff adds:

The entrapment occurred as follows: Shortly before I left Red Bluff Riverside Park in the evening of April 28, 2008, there was an unmarked police car which passed near my car to verify my presence and notify (by radio) two police vehicles (one unmarked) that I would soon be passing through the intersection where I would be cited. As soon as I entered the intersection on a green light an unmarked police car entered from the opposite side and violated my right of way by turning left directly in front of me in order to block me from getting any further into the intersection and to make it appear that I had entered on a red light.

There was a yellow light for three seconds after this happened and I proceeded to the center of the intersection before the light turned red. At about this time Officer Rossi, who was waiting around the corner and out of sight at the next intersection a block away, upon a signal from the driver who blocked my right of way, suddenly appeared and followed me out of the intersection, where I was cited. There was no marked police vehicle in sight when I entered the intersection. . . .

I believe that Mr. Capilla and other police officers were annoyed by my continued presence of several years in Red Bluff as a homeless person who slept in a vehicle, although I was never accused by anyone of doing anything illegal until the day of the citation. Mr. Capilla is no longer Chief of Police in Red Bluff.

Mr. Martin Perrone, who claimed to be an investigator for the Tehama DA Office, approached me one day in August 2007 while I was in Riverside Park in my car and told me that he was conducting a "sweep" of the park (all by himself?) and he questioned me implying that I had been drinking (alcohol) and after I denied this he realized when he saw a large bag of recyclable aluminum cans in my car that I was not drinking at all and left me alone. There were no other police in evidence at the time of the sweep and I did not see Mr. Perrone approach anyone else. I often wonder if Mr. Perrone may have been the scheduled prosecutor at the trial mentioned above, and was only attempting to find out why I was still in Red Bluff. There appears to be a close connection between Mr. Capilla, Mr. Rossi, and Mr. Perrone.

2

1    The underlying allegation in plaintiff's complaint is that he did not, in fact,

2  commit any traffic violation on the day in question.  Plaintiff asserts that the defendants are liable

3  for their conduct because he had done nothing wrong.

4

5                          **II.  STANDARD FOR MOTION TO DISMISS**

6    In considering a motion to dismiss, the court must accept all allegations of

7  material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

8  court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

9  v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

10  738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

11  ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

12  395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

13  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

14  (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

15  lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

16    Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

17  the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

18  and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)

19  (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for

20  failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

21  recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

22  raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain

23  "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has

24  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

25  reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at

26  1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

                                              3

than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

In their motion to dismiss, defendants argue, among other things the court should abstain under the Rooker-Feldman doctrine from exercising jurisdiction. Under the Rooker-Feldman abstention doctrine, lower federal courts lack jurisdiction to hear matters already decided in state court. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine applies in cases "brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).

1    An exception, inapplicable here, would be where Congress expressly grants federal courts

2    jurisdiction to review state court judgments (such as habeas corpus, for example).

3              The court agrees.  State court records defendants request the court to judicially

4    notice reveal the following timeline:[1]

5      April 28, 2008          Plaintiff issued traffic citation no. 92938, by Red Bluff
                               Police Department officer J. Rossi.
6
       May 2, 2008             Plaintiff was notified by the Tehama County Superior Court
7                              that he had an appearance date scheduled for June 2, 2008,
                               in relation to the pending traffic violation charge.
8
       June 2, 2008            Plaintiff failed to appear.
9
       June 13, 2008           Plaintiff telephoned the Tehama County Superior Court
10                             asking for another appearance date and his case was re-set
                               to July 7, 2008.
11
       July 7, 2008            Plaintiff failed to appear.
12
       August 18, 2008         Plaintiff telephoned the court requesting another
13                             continuance and his matter was re-set to September 8,
                               2008.
14
       September 8, 2008       Plaintiff failed to appear.
15
       February 6, 2009        After failing to appear three times, the state court convicted
16                             plaintiff in absentia, increased his fine for failing to appear
                               on three prior occasions, and informed plaintiff that the
17                             Department of Motor Vehicles would be notified with a
                               request for suspension of license pursuant to California
18                             Vehicle Code § 40509.5.

19     February 16, 2012       Plaintiff was granted amnesty under California Vehicle
                               Code § 42008.7.
20

21   / / /

22   / / /

23
           [1]      The court may take judicial notice pursuant to Federal Rule of Evidence 201 of
24   matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).
     Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp.
25   of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S.,
     378 F.2d 906, 909 (9th Cir. 1967).  Here, defendants' request that the court judicially notice
26   state court records should be granted.

                                              5

1        It is clear from the record that plaintiff's state court case came to conclusion with

2    the grant of amnesty in February 2012.  It is also clear that the same party was involved in both

3    this action and the state court action – namely plaintiff.  And it is also clear that plaintiff had

4    ample opportunity to raise his constitutional issues in the state court.  Specifically, had plaintiff

5    appeared for any of the three arraignments scheduled in his case, he could have entered a plea of

6    not guilty, had the matter set for trial, and raised his arguments in that context.  For these reasons,

7    the <u>Rooker</u>-<u>Feldman</u> abstention doctrine operates to preclude this court's review.[2]

8

9                            **IV.  CONCLUSION**

10        Based on the foregoing, the undersigned recommends that defendants' unopposed

11    motion to dismiss (Doc. 19) be granted.

12        These findings and recommendations are submitted to the United States District

13    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

14    after being served with these findings and recommendations, any party may file written

15    objections with the court.  Responses to objections shall be filed within 14 days after service of

16    objections.  Failure to file objections within the specified time may waive the right to appeal.

17    <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18

19     DATED:  September 5, 2013

20                                    _____
                                      **CRAIG M. KELLISON**
21                                    UNITED STATES MAGISTRATE JUDGE

22

23        [2]        The court had earlier recommended, upon screening plaintiff's complaint, that the
      <u>Rooker</u>-<u>Feldman</u> abstention doctrine should apply in this case.  That recommendation was not
24    adopted by the then-assigned District Judge because, based on the record as it existed at the time,
      the court could not be certain that plaintiff's case had resulted in a final state court judgment.
25    Documents attached to defendants' request for judicial notice, which should be granted, resolve
      that question – plaintiff's traffic case was concluded through a final judgment awarding amnesty,
26    deeming the fine paid in full, and recalling the case from collection.